UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANITTA T.,
    *Plaintiff,*

v.

KILOLO KIJAKAZI,
    Acting Commissioner of Social Security,
    *Defendant.*

No. 3:23-cv-721 (JAM)

### ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND GRANTING MOTION TO AFFIRM THE DECISION OF THE ACTING COMMISSIONER OF SOCIAL SECURITY

Plaintiff claims she is disabled and unable to work. She brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of the Acting Commissioner of Social Security, who denied her claim for disability insurance and supplemental security income.[1] Plaintiff has moved to reverse the decision, and the Acting Commissioner has moved to affirm.[2] For the reasons discussed below, I will deny the Plaintiff's motion to reverse and grant the Acting Commissioner's motion to affirm.

#### BACKGROUND

The following facts are taken from transcripts provided by the Acting Commissioner.[3] In March 2019, Plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[4] Her alleged disability began on December 31, 2015.[5] The Social Security Administration ("SSA") initially denied Plaintiff's

---

[1] Docs. #1, #20.
[2] Docs. #20, #25.
[3] *See* Doc. #15. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. X).
[4] Doc. #15-1 at 382–92 (Tr. 375–85).
[5] *Id.* at 382 (Tr. 375).

1

claims in April 2019, and again upon reconsideration in August 2019.[6] She then filed a written request for a hearing.[7]

Plaintiff appeared with counsel and testified before an ALJ in a February 2022 hearing.[8] A vocational expert also testified.[9] In March 2022, the ALJ entered a decision concluding Plaintiff was not disabled within the meaning of the Social Security Act.[10] The SSA Appeals Council denied Plaintiff's request for review in April 2023.[11] Plaintiff then filed this federal court action in June 2023.[12]

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the

---

[6] *Id.* at 93–120 (Tr. 86–113), 123–146 (Tr. 116–39).
[7] *Id.* at 169–70 (Tr. 162–63).
[8] *Id.* at 42–80 (Tr. 35–73).
[9] *Id.* at 72–78 (Tr. 65–71).
[10] *Id.* at 19–41 (Tr. 12–34).
[11] *Id.* at 8–13 (Tr. 1–6).
[12] Doc. #1.

claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts to the Commissioner at Step Five to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2015, the alleged onset date.[13] At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the thoracic and lumbar spines, status post left patellar rupture, and asthma.[14] The ALJ also acknowledged Plaintiff's carpal tunnel syndrome and alleged mental limitations but determined that they were non-severe impairments.[15] In addition, the ALJ noted Plaintiff's allegations related to urinary incontinence but concluded the condition was not medically determinable.[16] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of

---

[13] Doc. #15-1 at 25 (Tr. 18).
[14] *Ibid.*
[15] *Id.* at 25–27 (Tr. 18–20).
[16] *Id.* at 27 (Tr. 20).

3

impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[17]

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(c) except that she cannot climb ladders, ropes, or scaffolds and must avoid work at unprotected heights and use of power tools or other sources of higher concentrations of vibrations.[18] The ALJ further determined that Plaintiff can frequently balance, occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl.[19] The ALJ further determined that Plaintiff should work in environments free from higher concentrations of dusts, fumes, gases, or other pulmonary irritants.[20]

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work.[21] At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Plaintiff's age (39 as of the onset date), education (high school), work background, and RFC could perform the requirements of a cashier II, marker, and router (clerical)—positions which collectively represented approximately 692,000 jobs in the national economy.[22] The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since December 31, 2015.[23]

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. §

---

[17] *Ibid.*
[18] *Id.* at 28–31 (Tr. 21–24).
[19] *Id.* at 28 (Tr. 21).
[20] *Ibid.*
[21] *Id.* at 31 (Tr. 24).
[22] *Id.* at 31–32 (Tr. 24–25).
[23] *Id.* at 32 (Tr. 25).

405(g).[24] Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

### *Plaintiff's credibility*

Plaintiff contends the ALJ "cherry-picked the few less restrictive [medical] notes" in evaluating her allegations of pain against the record.[25] But such a claim is contradicted by the text of the ruling. The ALJ found that though Plaintiff "commonly report[ed] back pain throughout the relevant period," the "longitudinal records with her medical providers reflect a baseline examination of an intact neurological system with normal gait."[26]

Take the results of a March 2016 MRI, which found the "curvature and alignment of the thoracic spine [to be] within normal limits" and "no abnormal signal in the thoracic spinal cord."[27] While the scan showed "a mild diffuse disc bulge," there was "no significant disc herniation, canal stenosis or neural foraminal narrowing in the thoracic spine."[28] A May 2017 MRI showed "no acute bony abnormalities," only "[m]ild degenerative changes" in the thoracic spine, and "no evidence of acute osseous injury."[29] Eighteen months later, there was "[n]o acute

---

[24] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[25] Doc. #20-1 at 27.
[26] Doc. #15-1 at 29, 31 (Tr. 22, 24); *see id.* at 28 (Tr. 21) (noting that the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").
[27] *Id.* at 716 (Tr. 709).
[28] *Ibid.*
[29] *Id.* at 713 (Tr. 706).

abnormality detected" in a November 2018 MRI.[30] Notes from an October 2019 examination referenced plaintiff's "[l]ow back pain" but reflected a normal gait, a referral to physical therapy, and recommendations for ice and heat, as well as "gentle stretching, walking, & core strengthening,"[31] Indeed, the physician at that appointment "reviewed the importance of daily exercise, discussed exercise options, [and] recommended 30-45 minutes cardiovascular exercise daily."[32]

At oral argument, Plaintiff's counsel pointed the Court to an August 2019 MRI, which showed "[m]ultilevel degenerative changes of lumbar spine," as evidence of the severity of Plaintiff's records.[33] But this overlooks the multiple notations of "[n]o change" in that record, as well as a September 2019 office visit in which the physician found that the MRI "show[ed] no significant change compared to prior MRI which was done in 2018" and concluded that "symptomatic treatment is indicated along with maintaining her exercise program and not gaining weight. Periodic medications may be needed to relieve [t]he discomfort."[34]

Although the ALJ did not discuss each of Plaintiff's records, a "court is not required to remand if the ALJ's reasons can be discerned from other steps in the ALJ's analysis or from the evidence in the record." *Howarth v. Berryhill*, 2017 WL 6527432, at *5 (D. Conn. 2017) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Accordingly, I find that "[t]he ALJ specifically acknowledged and considered plaintiff's complaints of [back pain]; he did not 'cherry-pick' evidence in the record, he simply weighed it." *Kathleen D. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 354553, at *10 (D. Conn. 2022).

---

[30] *Id.* at 702 (Tr. 695).
[31] *Id.* at 1171–72 (Tr. 1164–65)
[32] *Id.* at 1173 (Tr. 1166).
[33] *Id.* at 1129 (Tr. 1122).
[34] *Id.* at 1130 (Tr. 1123).

Plaintiff also claims that the ALJ failed to make adequately supported findings with respect to her pain.[35] "[T]o the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). This analysis requires the ALJ to consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) treatment, other than medication, claimant received for pain relief; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see Campeau v. Colvin*, 2016 WL 5172809, at *6 (D. Conn. 2016).

The ruling is replete with the ALJ's analysis of these factors. As to the first factor, the ALJ highlighted Plaintiff's "daily activities" and her "ab[ility] to prepare meals, use public transportation, go shopping, manage finances, and spend time with others."[36] As to the second and third factors, the ALJ remarked that Plaintiff had weakness in her legs, numbness in her feet, "commonly report[ed] back pain" and experienced "episodes of exacerbation that were most often related to accidents."[37] As to fourth and fifth factors, the ALJ noted that Plaintiff "took prescription medication" to treat her back pain and "engaged in a few brief periods of physical therapy" but found "no convincing evidence for treatment with a pain management specialist or the consideration of surgery, outpatient physical therapy, or other consistent treatment regimen."[38] The ALJ also considered that Plaintiff was discharged from the hospital in January

---

[35] Doc. #20-1 at 26–27.
[36] Doc. #15-1 at 27 (Tr. 20).
[37] *Id.* at 28–29 (Tr. 21–22).
[38] *Id.* at 30 (Tr. 23).

7

2022 with a walker but found "no clear indication that the claimant was expected to require this device in the long-term."[39]

Even accepting Plaintiff's argument that the ALJ did not explicitly enumerate and examine each of the aforementioned factors, "[t]he ALJ need not . . . reference each of the seven factors or every particular piece of evidence in order to explain why he found a claimant's complaint of pain not credible." *Duane N. v. Comm'r of Soc. Sec.*, 2023 WL 2365991, at *5 (D. Conn. 2023) (citing *Mongeur*, 722 F.2d at 1040); *see also Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) ("Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand."). In short, the ALJ applied the correct framework in evaluating Plaintiff's pain.

### *Considerations in the RFC*

Plaintiff also argues that the ALJ left out relevant exertional limitations in the RFC determination—in particular, Plaintiff's difficulty sitting, standing, and walking.[40] But Plaintiff is mistaken. Although Plaintiff testified that, on average, she cannot sit for more than 15 minutes, stand for more than 5 minutes, or walk for more than 5 minutes,[41] the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consist with the medical evidence and other evidence in the record."[42] The ALJ noted that plaintiff was "unable to perform range of motion movements at one appointment" and "displayed back tenderness at another" but reasoned that these appointments were "outliers," as her examinations "much more commonly reflected an intact neurological system and/or normal

---

[39] *Ibid.*
[40] Doc. #20-1 at 28.
[41] Doc. #15-1 at 59–62 (Tr. 52–55).
[42] *Id.* at 28 (Tr. 21).

gait."[43] Moreover, "records from the relevant period contain numerous notations to the [Plaintiff] walking daily" and recommendations for exercise.[44] Therefore, I cannot find that the ALJ erred in accounting for Plaintiff's "significant limitations" by limiting her "to a range of light work with highly restrictive postural limitations."[45]

Relatedly, Plaintiff contends that because the ALJ found the submissions of medical professionals to be "of limited persuasiveness," the RFC determination was "not based on substantial evidence."[46] Plaintiff is correct that the ALJ found the submission from A.P.R.N. Cindy McDonough to be "neither inherently valuable nor persuasive" because she only opined that the plaintiff is disabled.[47] Similarly, the ALJ found that the State Agency assessments of a "nonsevere spine disorder" were "of limited persuasiveness" because the medical professionals reviewed a limited portion of the record.[48] Indeed, the ALJ found that "additional records are consistent with [Plaintiff's] spine disorder being severe."[49]

But an ALJ need not rely on medical opinion evidence in formulating an RFC. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *see, e.g.*, *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the

---

[43] *Id.* at 29 (Tr. 22).
[44] *Id.* at 30 (Tr. 23); *see also id.* at 31 (Tr. 24) (noting that plaintiff's records "reflect a baseline examination of an intact neurological system with normal gait").
[45] *Id.* at 30 (Tr. 23).
[46] Doc. #20-1 at 29.
[47] Doc. #15-1 at 31 (Tr. 24).
[48] *Ibid.*
[49] *Ibid.*

9

record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity.").

Plaintiff further argues that the ALJ did not account for "non-exertional factors," such as her lack of concentration, fatigue, and urinary incontinence, which "contribute to off-task behavior and absenteeism."[50] The record belies Plaintiff's argument. First, the ALJ credited Plaintiff's testimony that "she is able to prepare meals, use public transportation, go shopping, manage finances, and spend time with others."[51] Second, the ALJ noted that Plaintiff's records show she "presented with a baseline of alertness" and "had normal attention span and concentration."[52] Third, although Plaintiff "testified that she needs diapers" the ALJ found that the record "d[id] not contain any formal workup confirming" urinary incontinence and thus Plaintiff's allegations were not medically determinable.[53] On this basis, I cannot conclude that the ALJ's RFC determination was erroneous, much less unsupported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to reverse (Doc. #20) and GRANTS the Acting Commissioner's motion to affirm (Doc. #25).

It is so ordered.

Dated at New Haven this 22nd day of January 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[50] Doc. #20-1 at 31.
[51] Doc. #15-1 at 26 (Tr. 19).
[52] *Ibid.*
[53] *Id.* at 27 (Tr. 20).